TEXAS TRACTION CO. v. SCOGGINS. (No. 7253.)†

(Court of Civil Appeals of Texas. Dallas. April 3, 1915. Rehearing Denied May 1, 1915.)

1. MUNICIPAL CORPORATIONS ☞114 — ORDINANCE—PUBLICATION—ORDINANCE REGULATING SPEED OF STREET CARS—STATUTE.

Denison City Charter (10 Laws Texas, 258) § 170, provided that an ordinance of a penal nature should be published at least 10 days in some newspaper in the city. An ordinance of the city provided that no street car should be drawn at a greater speed than six miles an hour, and that any person who should fail to comply should be deemed guilty of a misdemeanor, and, upon conviction, be fined. The continued existence of such ordinance became material in an action against a street railroad for personal injuries, and the original draft of another ordinance was found, which provided that no car

———

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

should be drawn at a greater speed than 12 miles an hour. *Held*, that under the city charter the publication of such amended ordinance was a condition precedent to its validity, and must be proved by the railroad in order to avail itself of the amendment.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 263–265; Dec. Dig. ☞114.]

**2. MUNICIPAL CORPORATIONS ☞122 — ORDINANCE — PUBLICATION — ORDINANCE REGULATING SPEED OF STREET CARS—SUFFICIENCY OF EVIDENCE.**

In an action against a street railroad for personal injuries, evidence *held* insufficient to justify finding by the jury that an amendment to a penal ordinance, increasing the permissible speed of street cars, had been published as required by law.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 281–289; Dec. Dig. ☞122.]

**3. MUNICIPAL CORPORATIONS ☞114 — ORDINANCE—PUBLICATION—AMENDMENT.**

Where, by a city charter, publication of a penal ordinance was a condition precedent to its taking effect, an amendment to such an ordinance, regulating the speed of street cars, though in itself prescribing no penalty, was required to be published, since the amendment, when incorporated in the original ordinance, was of a penal character.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 263–265; Dec. Dig. ☞114.]

**4. MUNICIPAL CORPORATIONS ☞110—ORDINANCES—ENACTMENT—PUBLICATION.**

Under Rev. St. 1911, art. 5502, prescribing general rules of statutory construction, where there were certain provisions in a city charter that, when ordinances were passed with certain formalities, they should thereupon become laws, and also a provision requiring all penal ordinances to be published as a condition precedent to their taking effect, the true meaning of the charter was that, when certain formalities had been observed in enacting penal ordinances, there should be the further requisite to their validity that they be published.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 239–244; Dec. Dig. ☞110.]

**5. STREET RAILROADS ☞94 — SPEED ORDINANCE—VIOLATION AS NEGLIGENCE.**

The violation by a motorman of a city ordinance, prescribing a penalty for the running of cars above a certain speed, was negligence per se subject to the limitation that, when the motorman discovered plaintiff's danger, he was only bound to use such care to stop his car as an ordinarily prudent person would have exercised under the same or similar circumstances to stop his car.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 201; Dec. Dig. ☞94.]

**6. EVIDENCE ☞192 — INJURY TO PERSON — EXHIBITION OF INJURY.**

In an action by a child of two years for personal injuries, when run over by defendant street railroad's car, necessitating the amputation of her leg below the knee, the exhibition of the injury to the jury was proper, as tending to show the extent of the injuries.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 677; Dec. Dig. ☞192.]

**7. DAMAGES ☞132 — VERDICT — EXCESSIVE DAMAGES—INJURY TO PERSON.**

In an action against a street railroad by a girl two years old, for injuries necessitating the amputation of her leg below the knee, where the evidence supported a finding of defendant's negligence, the bare award of $10,000 damages did not afford occasion for the exercise by the appellate court of its limited right to reverse on account of an excessive verdict.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. ☞132.]

Appeal from District Court, Grayson County; W. M. Peck, Judge.

Action by Dorothy Scoggins against the Texas Traction Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Templeton, Beall & Williams, of Dallas, and Head, Dillard, Smith, Maxey & Head, of Sherman, for appellant. Wolfe & Wood, of Sherman, and Jas. P. Haven, of Dallas, for appellee.

RASBURY, J. Appellee, an infant, by her father, as next friend, sued appellant for damages for personal injuries alleged to have been inflicted by appellant in negligently propelling one of its cars upon appellee while she was crossing its tracks in Denison, Tex., so injuring one of her legs as to necessitate amputation. The negligence alleged was in propelling the car which injured appellee at an excessive rate of speed and in failing to exercise care in looking out for persons about to cross its track, especially children, and in failing to exercise ordinary care to avoid the injury after discovering appellee's peril, all in violation of the provisions of an ordinance regulating the operation and speed of street railways in Denison, Tex.

Appellant conceded the injury to appellee and her youth and lack of discretion, but denied that the injuries to appellee resulted from its negligence, but from the negligence of appellee's mother, by whom she was accompanied at the time, and further that, after discovering appellee's peril, it did use all means to avoid the injury. Further appellant urged that the ordinance it was alleged to have violated did not apply to electric cars, and was as well unreasonable, impracticable, and void.

Appellee's father for the same cause also sued appellant for damages accruing to him individually, and by agreement the cases were consolidated. There was jury trial; two verdicts being returned, one for appellee for $10,000 and one against her father. Judgments followed the verdicts. Within the time provided by law, appellant sought a new trial in the appellee's case, which was overruled. Nine days after said motion was overruled, appellant filed in court a motion to set aside the order overruling its motion for new trial on the ground that there was no ordinance of the city of Denison limiting the speed of cars to six miles an hour, which the trial court had assumed there was, and upon which assumption at trial instructed the jury that, if appellant was exceeding such speed at the time appellee was injured, it would in law constitute negligence. This

motion was also overruled. From the action of the court in the particulars stated, appellant has appealed. No appeal was taken from the verdict and judgment in the case of appellee's father.

A statement of the essential facts pertaining to the merits of the case is not really of prime importance; but, for the sake of orderliness, we state the essential facts relating to the manner in which appellee received her injuries, which are that, just prior to the time of the injury, Mrs. Scoggins and her two children, Orville and appellee, respectively five and two years of age, were upon the sidewalk on the south side of Hull street, in Denison, Tex., moving east towards Lamar avenue, a north and south street, intending to cross Hull street at its intersection with Lamar. When Mrs. Scoggins reached the west side of Lamar avenue, her children had crossed Lamar avenue and were on the east side thereof, and, as we gather from the evidence, turned north and continued their progress across Lamar avenue, and, while so proceeding, the appellee was struck by one of appellant's cars going east just as she reached the north rail of the track. The car ran over and crushed the child's leg to such extent as to thereafter require amputation below the knee. The car was propelled by electricity, equipped with air brakes in working order, and was in charge of a conductor and motorman and approached the point of injury from the west, and was not seen by Mrs. Scoggins until it passed her. The conductor was in the vestibule of the car with the motorman and saw appellee from the time she started across Hull street, until she was struck by the car on the north track. The car was going 6 or 8 miles an hour at a point 50 feet distant from the place of injury and about 4 miles an hour when it struck appellee. Hull street, upon which the line of railway is located, is 70 feet wide and Lamar avenue 80 feet wide. At the time of the injury to appellee, there was in force in the city of Denison an ordinance passed in pursuance of authority granted the city by special charter enacted by the Twenty-Second Legislature (10 Laws Texas, 258), and retained in force and effect by subsequent special charter granted by the Thirtieth Legislature (13 Laws Texas, 332), regulating the speed of street railway cars. The ordinance, omitting unessential portions, is as follows:

"Art. 392. That the following rules and regulations concerning the running of street railway cars shall be binding upon every person, firm, company or corporation owning or operating a street railway in this city: 2. No car shall be drawn at a greater speed than six miles an hour. 6. The driver or conductor of each car shall keep a vigilant watch for all vehicles, and persons on foot, especially children, either on the track or moving towards it, and upon the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible.

"Art. 393. Any person or persons who shall fail to comply with or who shall violate or cause to be violated any of the provisions of the preceding sections shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined not less than two dollars, nor more than one hundred dollars."

[1, 2] This ordinance was pleaded by appellee, and its violation with reference to speed, keeping a lookout, and in failing to exercise care when appellee was discovered upon its track charged against appellant. When the ordinance was offered in evidence, it was objected to on the ground that it was irrelevant, immaterial, and not shown to be the last ordinance with reference to the operation of cars. It appears from the record that appellant, prior to trial, through various sources, assisted by the then city secretary of Denison, sought diligently to ascertain whether the ordinance had been repealed or amended, but was unable to secure any information of that fact, either from printed ordinances of the city or from the record books of the city, wherein was recorded all ordinances, and the city secretary gave it as his opinion to both counsel for appellant and appellee that the ordinance pleaded was the last ordinance. After trial, appellant, through its agents, instituted another search for some later ordinance regulating the speed of street cars, in which it was assisted by the city attorney and his assistant, which search included a re-examination of ordinance books, etc., and again such amendment could not be found. Later, and subsequent to the overruling of appellant's motion for new trial, the city secretary, while examining a number of old bonds and ordinances in search of a particular bond, found the following original draft amending the ordinance quoted above:

"An ordinance amending section 2, article 392 of chapter 8, of title 16, of the Revised Ordinances of the city of Denison, Texas.

"Be it ordained by the city council of the city of Denison:

"Section 1. That section two (2) of article 392 of chapter 8, of title 16, of the Revised Ordinances of the city of Denison, be and the same is hereby amended so as to hereafter read as follows: '2. No car shall be drawn at a greater speed than twelve (12) miles an hour.'

"Sec. 2. At least two cars running separate, shall be run on West Denison line at the same time and on West Denison line, cars shall run each way every fifteen (15) minutes.

"Sec. 3. This ordinance to take effect upon and after the date of its passage and approval."

While we have not copied it, it appears on the face of the amendment that the amendment was enacted in the manner and form provided by the city charter.

When the amendment was found, appellant promptly filed a motion to set aside the order of court overruling its original motion for a new trial, and in the said motion sought another trial upon the same grounds alleged in its original motion. In addition to what we have already related concerning the diligence of all parties to discover the amendment, it was shown upon further investigation that the amendment was not recorded in the book

designated for criminal ordinances, but instead was recorded in a book designated for the recording of civil ordinances. Based upon numerous affidavits of witnesses familiar with the procedure in such cases, it was shown that it was practically the unvarying custom of the city authorities, in reference to penal ordinances, to paste by the side of the ordinance in the book containing same the printed copy of the ordinance clipped from the newspaper publishing same. No such clipping was pasted by the side of the amended ordinance in question. Nor was the ordinance recorded in the penal ordinance book among those required by the charter to be published. On the contrary, it was recorded among the civil ordinances which are not required to be published. Nor was there anywhere in the records of the city of Denison anything evidencing such publication, nor were any extraneous facts shown indicating or tending to show that either the city or appellant had been acting upon the amended ordinance.

It is urged that the court erred in overruling appellant's motion to set aside the order overruling the original motion for a new trial; several reasons being assigned in support of the contention, the controlling one being the action of the district judge in instructing the jury that appellant was guilty of negligence, as matter of law, if the car which injured appellee was exceeding the limit of speed prescribed by said original ordinance at the time of the injury, for the reason that, by the provisions of the amended ordinance, it was lawful for appellant to propel its cars at a speed of 12 miles an hour. Conceding the soundness of the legal proposition on the facts related, appellee challenges its application here on the ground that the amended ordinance was not a valid and subsisting one, because, as shown by the evidence, it was never published as required by the charter of the city of Denison in force at the time of its enactment, and hence not the law of the case. The charter of the city of Denison, in force at the time the amended ordinance was enacted, provided that:

"All ordinances of a penal nature shall be published at least ten days in some newspaper in the city of Denison." 10 Laws Texas, 258, § 170.

The first inquiry in view of this provision of the charter is: Is the amended ordinance a penal one? And that it is we conceive to be beyond intelligent controversy, since all ordinances, like the statutes of the state or nation, are penal when they prohibit an act and impose a penalty for the commission of it. By the provisions of the ordinance under discussion, running street cars at a speed in excess of 12 miles an hour was a misdemeanor, punishable, on conviction, by fine of not less than $2 nor more than $100. Being then a penal ordinance and one required by the Legislature in granting the charter to the city of Denison to be published, the weight of authority is that the validity of same is dependent on at least a substantial observance of such requirement. By one authority it is said that:

"An ordinance, being a law, must be published in some way in order to give notice to those affected thereby of its existence. It is generally required by law that the ordinance shall be published, and the statutory or charter regulations on this point should be closely followed in order to avoid any question as to the validity of the ordinance." 1 Mod. Law Mun. Cor. § 571, p. 482.

The same author quotes approvingly from Pitts v. District of Opelika, 79 Ala. 527, the expression that:

"A reasonable opportunity must be given to the people within the corporate limits to be informed as to the ordinances they are commanded to obey, before they can be punished for their violation."

And he concludes his own views by the further statement that:

"When the charter or general law requires publication, it must be made according to the requirement, else the ordinance will be void and no penalty can be enforced under it."

Another authority says:

"It is a just and salutary principle which requires the legislative action of a municipal body to be promulgated or published in some manner before it can become effective."

Such publication "may be required by charter or statutory provisions and to be made by some designated officer charged with this particular duty, and a failure to exercise the authority in the manner thus prescribed is fatal." 2 Abbott, Mun. Corp. § 528, p. 1331.

Another respected authority, after reciting that much confusion and discord has arisen in American courts on the question as the result of hesitating between the common-law rule that publication is not necessary to the validity of municipal ordinances and the intuitive and reasonable aversion of a free people to considering as law anything not generally known or officially formulated and promulgated, states the rule to be that:

"When the Legislature has prescribed the nature and mode of publication, none other is sufficient to give validity to the ordinance." 28 Cyc. 360, 361.

While we have been unable to find a fact case by our own courts, yet it has been said, concerning the enactment of ordinances by municipalities fixing charges for the cost of improvements against the property of citizens, that:

"Each act required to be done is essential to the exercise of the jurisdiction, and each must be rigidly performed. The courts cannot say that the omission of some requirement is unimportant, or that an act different from that directed is substantially as good. The effect of the proceeding being to charge the property of the citizen with a burden for the public benefit, the requirements of the law as to the exercise of the power should be deemed mandatory." Flewellin v. Proetzel, 80 Tex. 191, 15 S. W. 1043.

To the same effect by analogy is Am. Cons. Co. v. Seelig, 104 Tex. 16, 133 S. W. 429; Southwestern Tel. & Tel. Co. v. City of Dallas, 104 Tex. 114, 134 S. W. 321.

If the directions of the Legislature in reference to the enactment of ordinances levying a tax against the property of citizens are to be rigidly observed, there is as much or more reason for the application of a similar rule when life or liberty is involved. Hence we conclude that publication of the ordinance, as amended, was necessary to its force and validity, under the provisions of the charter of the city of Denison. That it was not published we think quite certain, in view of the facts stated in this opinion. Those facts not only fail to show that the ordinance, as amended, was published, but nearly conclusively show that it was not. Certainly the facts recited would not support a finding by the jury that the ordinance was published. Such being the condition of the evidence, there was no error on the part of the district judge in refusing to set aside the order overruling the motion for new trial, and from which it results that we are without authority to disturb his action in that respect.

[3] But it is urged incidentally to the main question that, even though it be conceded that it was necessary to publish the original ordinance, it was not necessary to publish the amendment thereto, because such amendment declared no penalty. We believe the contention unsound. Obviously the amendment was not and did not purport to be a complete ordinance. On the contrary, it was and purported to be an amendment of the original ordinance. When legally adopted, the amendment and the original ordinances with the change would have constituted the whole law on the subject. The penalty being expressly retained by the provisions of the amendment, it was, of course, a penal ordinance, the validity of which depended upon its publication as directed by the Legislature.

[4] It further urged, in effect, that the provision of the charter with reference to publication is merely directory, since it nowhere appears in the charter that publication is made a condition precedent to the taking effect of the ordinance, and because it is provided in the charter that "all ordinances shall take effect from passage, unless otherwise therein expressed," and because it is further provided therein, in effect, that all ordinances, when enrolled, compared, and formally indorsed as directed, shall become law, unless the mayor shall veto same within the time allowed for that purpose, provided it may be passed over the mayor's veto, etc. 10 Laws Texas, 258, §§ 171, 174. These provisions do appear in the charter. In short, there are provisions in the charter reciting that, when ordinances are passed with certain formalities, they shall thereupon become laws. There is also the other provision in the charter requiring all penal ordinances to be published at least ten days in some newspaper. Keeping in view the rule of construction prescribed by article 5502, R. S. 1911, we think it clear that it was the intention of the Legislature that all penal ordinances enacted by the city of Denison should be published in order that the citizens might have notice thereof. The declaration in the charter that, when certain formalities had been observed in the enactment of ordinances, same should thereupon become laws, is but declaratory of the successive steps necessary to be taken in order to enact valid laws under the charter rather than that other provisions in the charter in reference to promulgation or publication of penal ordinances is not also to be observed. Any other conclusion would be to construe as meaningless the mandatory provision to publish and to ignore as well the plain intention of the Legislature. The appropriate time to publish is truly when the law has been matured in the manner and form prescribed by the statute for the enactment of lawful ordinances, and, until so enacted, their publication would be a useless proceeding. Accordingly we conclude that, notwithstanding the quoted provisions of the charter, it was necessary to publish all penal ordinances after passage in order to make them operative.

[5] It is next urged that the court erred upon trial of the case in charging the jury that a violation of the several provisions of the speed ordinance relating to speed, keeping a lookout and a failure to stop the car in the shortest time possible after the appearance of danger to appellee, would be negligence on the part of appellant, because such a charge was upon the weight of the evidence. There was no error in the respect pointed out, for if, as we have concluded, the original ordinance was in force at the time of the trial, it imposed upon appellant the precise duty given in the court's charge, and the violation of its provisions would be negligence per se, subject, of course, to the limitation that, when appellant's motorman discovered appellee's danger, he was only bound to use such care as an ordinarily prudent person would have exercised under the same or similar circumstances to stop his car. This limitation of the provisions of the ordinance was carefully observed by the district judge in his charge. Further, on this same issue, the court, at the request of appellant, after grouping the facts in reference to the time when appellant's motorman first discovered appellee's danger, specially instructed the jury, if thereupon and then appellant's employés "exercised ordinary care to stop the car and slacken its speed and used all the means they had at hand to stop the car and slacken the speed and avoid striking and injuring the said Dorothy Scoggins, you will find for the defendant." It thus appears that the law of the case as developed was given, and that appellant has in that respect suffered no injury.

[6] It is next urged that it was error to permit appellee's father to exhibit to the jury appellee's limb at the point of amputation. It is well settled that such exhibition of injuries is permissible on the theory that they tend to show the true extent of the injuries. St. Louis & S. F. Ry. Co. v. Mathis, 101 Tex. 342, 107 S. W. 530; M., K. & T. Ry. Co. v. Moody, 35 Tex. Civ. App. 46, 79 S. W. 857; Texas Midland Railroad v. Brown, 58 S. W. 44; M., K. & T. Ry. Co. v. Lynch, 40 Tex. Civ. App. 543, 90 S. W. 513.

[7] It is finally urged that the verdict is grossly excessive, and for that reason should be set aside. Appellee was a girl of two years, and her injuries resulted in the loss of a leg. The evidence supports the finding of the jury that it was due to the negligence of appellant. The verdict was for $10,000. Such being the record, and our right to reverse on the ground assigned being limited, the naked fact that $10,000 was awarded as damages does not afford sufficient excuse for the exercise of that limited authority.

The judgment is affirmed.