Argument of counsel.

[Argued October 24; decided November 20, 1893.]

## BECK *v.* VANCOUVER RAILWAY CO.

[S. C. 34 Pac. Rep. 753.]

1. RAILWAYS — CONTRIBUTORY NEGLIGENCE.— A railway track is always a place of danger, and one who ventures to walk upon it must make vigilant use of his eyes and ears, and, upon discovering an approaching train, must leave the track if it is possible to do so; neglect of these precautions is such contributory negligence as will prevent a recovery in case injury results.

2. IDEM.—If one deliberately, and with his eyes open, goes into danger, he will not be heard to complain because he has been injured; it is his duty to use all the ordinary means that men generally use for their preservation, and if he fails in that regard, if he is apprised of the situation, and chooses a way of danger when a way of safety is open to him, he is guilty of contributory negligence, and must abide the result of his hardihood.

3. RAILWAYS — NEGLIGENCE — SPEED OF TRAINS.— Running a railroad train faster than is permissible under an ordinance which merely prescribes a penalty for violating its provisions is not negligence *per se*; but is a circumstance proper to be submitted to the jury with the other evidence in the case.

APPEAL from Multnomah: E. D. SHATTUCK, Judge.

This is an action by Michael Beck against the Portland & Vancouver Railway Company to recover damages for personal injuries alleged to have been sustained by the plaintiff, and caused by the negligence of the defendant. The answer denied the alleged negligence, and set up as a defense the contributory negligence of the plaintiff, which the reply denied. The trial resulted in a verdict and judgment for the defendant, from which this appeal was taken.                    AFFIRMED.

*Mr. Berryman M. Smith* (*Messrs. Victor K. Strode* and *Chas. N. Wait* on the brief), for Appellant.

The instruction given by the court concerning the speed of the train seems to consider a violation of a city

ordinance or statute regulating the speed of trains as a mere circumstance tending to show neglect on the part of the company. We submit that the better rule, and the one supported by a large majority of the cases, is that a breach of duty imposed by law in this regard constitutes negligence *per se: Keim* v. *Union Ry. Co.* 90 Mo. 314; *St. Louis Ry. Co.* v. *Dunn,* 78 Ill. 197; *Correll* v. *Ry. Co.* 38 Iowa, 120; 18 Am. Rep. 22; *Railway Co.* v. *Donovan,* 84 Ala. 141; *Railway Co.* v. *Knutson,* 69 Ill. 103; *Piper* v. *Chicago Ry. Co.* 77 Wis. 247; *Chicago Ry. Co.* v. *Boggs,* 101 Ind. 522, 51 Am. Rep. 761; 2 Thompson on Trials, 1232; 2 Rorer on Railways, 1006.

*Mr. Geo. H. Durham* ( *Mr. Harrison Gray Platt* on the brief), for Respondent.

The following cases are ample authority for the instruction of the court regarding the speed of trains as compared with the speed allowed by ordinance: *Studley* v. *St. Paul Ry. Co.* 57 N. W. Rep. 116; *Phila. R. R. Co.* v. *Stebbing,* 62 Md. 517; *McKonkey* v. *C. B. & Q. R. R. Co.* 40 Iowa, 206; *Horn* v. *B. & O. Ry. Co.* 54 Fed. 304; Shearman & Redfield on Negligence, § 478.

Opinion by MR. CHIEF JUSTICE LORD.

The errors assigned relate principally to certain instructions given by the court, to which exceptions were reserved. Before proceeding to discuss the points raised, a brief outline of some of the facts is essential, to show the location of the street where the accident occurred, the nature of the cut through which the cars passed, and the circumstances connected therewith. Other facts, as far as necessary, will be stated in connection with the points discussed. The record discloses that the defendant's railroad passes along Margaretta Avenue, a street of the

city of Albina, now within the corporate limits of the city of Portland; that the accident occurred on the line of said railroad, at a point on this avenue where there is a cut about one hundred and fifty feet in length, with banks varying in height from three to six feet; that neither at the time of such accident, nor prior thereto, had any sidewalk been laid on said avenue, but that it had been the habit of pedestrians to use the track through the cut as a pathway, of which the defendant had notice; that on the night of the accident, at about eleven o'clock, the plaintiff was found in an unconscious state, lying near the middle of said cut by the side of the railway track, very seriously injured, whence he was taken to the hospital.

The plaintiff testified that at about nine or ten o'clock on the night of the twenty-fourth day of September, eighteen hundred and ninety-one, he was walking along the railroad track, and that, when he was near the middle of said cut, one of the defendant's trains, drawn by a dummy or locomotive, suddenly approached him, running at a speed of eighteen or twenty miles an hour, from a northerly direction, without having any headlight, or giving any warning or signal, and that he had no notice of its approach until it was within one hundred feet of him; that he endeavored to stop the train by hallooing, and tried to escape, but owing to the fact that he was very much excited, and in great fear at his perilous position, he failed to avoid the train, which struck him, causing the injuries alleged; that before he entered the cut, he looked up and down the railway track, and also listened for the approach of any trains that might be coming, and that he did not see or hear any; that the track was a tangent for a considerable distance either side of said cut where the accident occurred; and that the night was dark and foggy. The defendant's evidence

tended to show that the headlight on the train was lighted at the time the accident occurred; that the train was running on schedule time, which was about eleven miles an hour; that it was a clear, starlight night; that the engineer and firemen were attending to their regular duties, and keeping a lookout, and that they knew nothing of the accident until they were notified of the same about midnight.   A city ordinance prohibiting cars from running at a greater rate of speed than eight miles an hour was specially pleaded in the complaint, and not denied in the answer.

We are now prepared to consider those portions of the charge to which exceptions were taken.   The portion first excepted to is as follows: "When men walk laterally upon a railroad track, it is their duty to look and listen for the approach of trains.   It is their duty, if they discover a train approaching, if possible, to leave the track.   It is their duty to do it.   It is not the time for them to remain and speculate about the probabilities of being run over, but if it is in their power to leave the track, it should be done.   If they fail to do it when possible, it is negligence on the part of such persons.   If you believe from the evidence adduced in this case, that this plaintiff was aware of the approach of that train by any of the modes that I have mentioned,—if he, in fact, knew that the train was approaching,— and that he could have got away from the train, even though it might be by throwing himself prostrate upon the incline of the cut, and he failed to use such means of self-preservation as were obvious and were at hand, then he should be charged guilty of negligence, that contributed to the injury which he sustained."   The next assignment of error is so closely akin to the one just stated that it will be convenient to consider them together.   It is as follows:   "A man cannot go deliberately, and with his eyes

open, into danger, and then complain of another that he is injured. It is his duty to use all the ordinary means which men do use for their preservation, and if he fails to do that, if there is a choice of ways for him to pass, one a way of safety and one a way of danger, and he is apprised of the situation in that regard, and takes the way attended with danger, he must abide the consequences of his hardihood."

The objection to the first instruction is that it more properly applies to a person walking along a railroad track where there is no grade or obstacle to prevent his escape from an approaching train, and who is injured by collision therewith, than to one walking on a track in a cut through which trains run where escape is difficult, and the perils of one's position, when realized, would be apt to destroy his equanimity of judgment, and thereby increase his liability to injury. Hence, it is claimed, that the instruction, as given, holds the plaintiff to a degree of care and circumspection of conduct that the circumstances of the case do not warrant. The objection to the other instruction is that it assumes that the defendant was not responsible for the perilous position in which the plaintiff was placed when the accident occurred, on the theory that if the plaintiff was familiar with the cut and its surroundings, the time when the trains passed, the difficulty of getting out of their way, and the dangers that would attend the journey through it, and knew there was another road which was safe, and parallel with it, and he chose to pursue the dangerous way, that he should be deemed to assume the risks incident to it, and should take the consequences of his hardihood. This objection includes an instruction not excepted to, but which connects the two already set out, and helps to show their relationship, and is so treated in the briefs. This instruction is as follows: "Furthermore, there is another

aspect of this case:   If·this plaintiff was well acquainted
with the situation of that·railroad, with this cut which
has been talked about in the evidence, with the time at
which the trains were running, with the narrowness of
the cut, and the difficulty of getting out of the way of
the train,—I say if you are satisfied that he was apprised
of all these things, knew them all, knew the danger that
would attend a journey through that cut on the track of
the road,—he should be deemed to have taken the risk
of the situation, and would have no cause of complaint
if he was injured."

It is shown that the locomotive was supplied with
the usual appliances for giving warning signals, but the
evidence is conflicting as to whether the headlight was
lighted; that there was room for a person between the
track and the bank of the cut, without coming in colli-
sion with a passing train, and that there were places
along the bank which one could clamber over; that the
cut was in a street through which the railroad ran; and
that parallel with it was a road on the bank with which
the plaintiff was acquainted, and over which, though
uneven, he could have passed with safety; that the track
was a tangent for a considerable distance on either side of
the cut; that plaintiff was familiar with the cut and its
surroundings, and knew and understood the dangers con-
nected with the journey through it, as well as the limited
means of escape from an approaching·train.   The in-
structions proceed upon the·hypothesis that a railroad is
a place of danger, and that it is the duty of one ventur-
ing upon its track, or a cut through which it passes,
which may be used as a pathway, to make vigilant use
of his eyes and ears, and that it is his duty, also, to leave
the track, if possible, when he discovers a train approach-
ing; and, if he fail to do so and be injured thereby, that
he would be guilty of negligence.   After this announce-

ment of the law, the trial court instructed the jury, in effect, as more directly bearing upon the facts of the case at bar, that if the plaintiff knew, while he was on the track, and in the cut where the injury occurred, that a train was approaching,— as by seeing its headlight,— and could have got out of way by the means that were at hand and obvious,— as there was some evidence tending to indicate that he might have done,— and failed to do so, and was injured, that he would be chargeable with contributory negligence.  Further, that if the plaintiff was acquainted with the situation of the railroad, and the cut, and was fully apprised of all the dangers that would attend a journey through it, and at the same time knew that there was a choice of ways for him to pass, one a way of safety, and the other of danger, and he deliberately chose the dangerous way, and was injured thereby, he should be deemed to have assumed the risk, and should take the consequences of his conduct.

We do not think the instructions are amenable to the objections raised or that they misstate the facts upon that phase of the law to which they are intended to apply. The vice of the plaintiff's first objection is that it assumes that the instruction applies to a state of facts materially different from those shown to exist herein; that there was no evidence tending to show the approach of the train, or that there was any obvious means of escape from collision available to the plaintiff, and that, without any knowledge of his surroundings, he was suddenly placed in the presence of unlooked-for danger, when prudent action or deliberate judgment is not expected or required.  As to the other objection, the instruction only assumes that the defendant is not liable for the injury if the plaintiff was guilty of contributory negligence.  It simply goes to the effect that one cannot voluntarily place himself in a place of danger, and then throw the responsibility for the resulting injury upon another.

The next instruction assigned as error is the following: "Something has been said, too, with regard to the speed of the train. It is not neglect of the company *per se* to run their trains faster than the ordinance of the city allows. The ordinance of the city imposes a penalty for its violation, but it did not confer upon the plaintiff any right of action as for a private wrong against the company; but the circumstance of the ordinance being violated you can take (consider?) in connection with all the other circumstances of the case upon the question of negligence." The objection to this instruction is that it declares that it is not negligence *per se* for the defendant to run its trains through the town faster than the ordinance allows. The object of the ordinance is for the protection of the public, who have a right to act on the assumption that its requirements will be observed. It does not give a right of action, but imposes a penalty for its violation. A breach of duty in this regard cannot be the foundation of a personal right of action, unless it has caused a personal injury that would not have occurred but for such violation of duty. The failure to observe the statutory duty must be the proximate cause of the injury that followed. The running of a train at a prohibited rate of speed in a town, being unlawful, is, in some sense, a negligent act, but it is only when such acts contribute directly to produce the injury complained of that it can be regarded as having established the defendant's negligence. The failure to observe such statutory duty is sometimes spoken of as "negligence *per se*," but it is said that, "except where the statute itself provides that any injury which is done by a party violating its provisions shall be conclusively presumed to have resulted from the violation, there is scarcely reason in treating such failures to observe statutory duty as negligence *per se*": 16 Am. & Eng. Enc. "Negligence," 420, *et seq.*

To say that the mere fact of the violation of the ordinance is conclusive evidence of negligence, or is negligence *per se*, without regard to the conduct of the plaintiff, or of the duty imposed upon him under the circumstances, would be to relieve him of the consequences of his acts when they contribute to the injury, and would result in an unjust liability upon the defendant. The rule as stated in section thirteen of Shearman & Redfield on Negligence is, "that the violation of an ordinance should always be deemed presumptive evidence of negligence, which, if not excused by other evidence, including all the surrounding circumstances, should be deemed conclusive." It is perhaps true, when the undisputed facts show that the injury was directly due to, and caused by, the running of the train at a prohibited rate of speed, that such breach of statutory duty should be deemed conclusive evidence of negligence. But the mere fact that the train was running at such rate of speed is not, *per se*, conclusive proof of negligence that will render the company liable, but it is evidence of negligence to be submitted to the jury, and considered with the other evidence in the case. The question is for the jury and not for the court to declare as a matter of law. The fact that the train was running at a greater rate of speed than is allowed by the ordinance the court submitted to the jury, as tending to establish negligence, and in this we do not think it erred.

The judgment must be affirmed.        AFFIRMED.