Argued April 1, affirmed April 29, 1919.

# NORTHWEST DOOR CO. *v.* LEWIS INV. CO.*

## (180 Pac. 495.)

**Appeal and Error—Review—Formal Assignment.**

1. Assignment' that court erred in rendering judgment for plaintiff is merely formal, and need not be considered.

**Insurance—Fire Insurance—Rights Against Third Party—Subrogation.**

2. Where company pays loss upon property destroyed by fire through negligence of a third person, the company becomes subrogated to the rights of insured to the extent of money paid under the policy.

**Parties—Fire Insurance—Action Against Negligent Third Person.**

3. Where insurance does not equal loss alleged from destruction of property by fire through the negligence of a third person, it is the duty of the company and insured to join as parties in action against the third person.

**Damages—Fire—Defense—Payment of Loss by Insurance Company.**

4. In action for negligent destruction of property by fire, defendant would not have the right to benefit of the insurance, and cannot rely, either in whole or in part, on defense that owner has been paid insurance by the company.

**Insurance—Fire Insurance—Payment of Loss.**

5. Evidence *held* sufficient to take to the jury the question whether insurance company paid any losses, so that they were entitled to be subrogated to insured's rights against defendant, a third person through whose negligence the property ·was destroyed by fire.

**Negligence—Fires—Requirements of Ordinances.**

6. Where fire which burned plaintiff's property was kindled on defendant's premises without the permit required by ordinance, an instruction that there was no evidence showing a violation of any ordinance, was properly refused.

**Negligence—Fires—Violation of Ordinance—Negligence Per Se.**

7. Where fire which was communicated to and destroyed plaintiff's property was kindled on defendant's premises without the permit required by ordinance, an instruction that where an act is done in violation of an ordinance, the law regards the act as negligently done was proper.

---

*On right of insurer who has paid a loss to maintain action against the party causing the loss, see note in 2 L. R. A. (N. S.) 922.

On right of insured who has paid the loss as against insured who has recovered against or settled with third person responsible for the loss, see note in 41 L. R. A. (N. S.) 719.

On the question of use of photographs in evidence, see notes in 35 L. R. A. 802 and 51 L. R. A. (N. S.) 842.     REPORTER.

**Trial—Instruction—Judicial Intimation.**

8. In action against defendant through whose negligence plaintiff insured's property was alleged to have been destroyed by fire started on defendant's premises, the words "having in view the probable danger of injury," at the end of each paragraph of an instruction defining negligence, *held* not a judicial intimation that there were dangers connected with the methods used by defendant in cleaning away debris from its property.

**Appeal and Error—Objections in Lower Court—Instructions.**

9. Where it was objected that court's instruction included items of damage not sustained by evidence, objection is insufficient to obtain review, where it failed to specifically point out what the items were.

**Trial—Instructions Sufficiently Given—Refusal.**

10. There was no error in refusing a requested instruction substantially covered by general instructions given.

**Evidence—Photographs—Admissibility.**

11. There being evidence tending to show that the condition of the premises photographed were substantially the same as on the day of the fire in question, there was no error in admitting the photographs.

**Evidence—Competency of Expert—Market Value.**

12. Preliminary testimony of a witness, tending to show that she had considerable knowledge of the market prices of the machinery, *held* to render her competent to testify as an expert as to the value of machinery destroyed by fire.

**Appeal and Error—Evidence—Qualification of Witness—Discretion of Trial Court.**

13. The determination of the qualification of a witness to testify as an expert is within the sound discretion of the trial court, and will not be disturbed on appeal, unless there is no evidence to sustain the decision.

**Negligence—Fires—Evidence—Admissibility.**

14. Where defendant's participation in burning debris from a former fire on its premises, resulting in the destruction of plaintiff's property, was in issue, evidence that defendant made claim against insurance companies for estimated cost of removing debris was admissible; it appearing that defendant's property was occupied by others at the time it was burned.

**Negligence—Fires—Evidence—Admissibility.**

15. Evidence as to finding fire on defendant's premises two days after plaintiff's property was destroyed by fire communicated from defendant's premises is properly admitted.

**Trial—Instruction Covered by Charge—Refusal.**

16. Requested instruction with reference to defendant being required to use only ordinary care and diligence to prevent fire started on its premises by third person from spreading to other premises *held* sufficiently covered by a general charge.

Trial—Erroneous Instruction—Cured by Other Instruction.

17. Error in using the expression "approximate cause" in instruction that if kindling of fire by defendant on its premises was the approximate cause of communicating sparks of fire resulting in the destruction of insured's property to find for plaintiff was cured by general instruction, stating, among other things, that "proximate cause" is the principal cause and is an important matter in cases of this kind.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.

This is an action for damages arising out of the alleged burning of the mill and factory of the plaintiff, Northwest Door Company, by reason of the negligence of defendant, Lewis Investment Company. The salient facts in the case, concerning which there is practically no dispute, are as follows:

On and prior to the third day of June, 1914, the day of the fire in question in this case, the plaintiff, Northwest Door Company, was the owner of a planing-mill then in operation, and situated upon a tract of land containing about two and one-fifth acres of land, all located in Portland, Multnomah County, Oregon. This property is bounded on the north by a ferry slip near the foot of Albina Avenue, on the east by River Street, on the south by Irving Dock, and on the west by the harbor line in the Willamette River.

The planing-mill mentioned consisted of a large heavily constructed two-story frame mill building and additions, platforms, wharfs and docks covering the entire tract of land above described. In and about the planing-mill was a large quantity of fixed and movable machinery, together with equipment and implements; also a large quantity of planing-mill stock, manufactured and unmanufactured, and in process of manufacture, together with material for manufacturing the same; also a quantity of office furniture, fixtures and supplies. A large quantity of lumber and material

was stacked and stored upon said property of the plaintiff, Northwest Door Company, and in the structures thereon. The latter, at said time, also owned and was in possession of a large quantity of lumber located near its said property on land belonging to the Montgomery Estate, situated on the east side of River Street immediately east of its said property. The property described was of the value of about $150,000.

The defendant, Lewis Investment Company, was, at all the times mentioned, the owner and in possession and in control of the following described premises, to wit: River lots 16, 17, 18 and 19 in Albina, now in the City of Portland, Multnomah County, Oregon. The southern boundary of the last-described property runs parallel with the northern boundary of the said property of the plaintiff, Northwest Door Company, and said lines are divided and separated by what is known as the "Albina Ferry Slip," which is 60 feet in width.

Prior to March 12, 1914, defendant Lewis Investment Company, owned, maintained, operated and controlled a large warehouse and dock on its said premises above described, and extending to the harbor line in front of the same, which warehouse and dock were about 400 feet in length and more than 100 feet in width, and the south end thereof was distant about 60 feet in a northerly direction from the mill building and property of the plaintiff, Northwest Door Company. Said warehouse and dock were constructed of lumber and timbers, and the floors and platforms, except the portion thereof about 60 feet wide abutting on River Street, were supported and built on piles and timbers driven into the earth; the floor and joists upon that portion near River Street as aforesaid were placed upon large sills that rested upon the earth; a bulkhead, or firewall, constituted the south wall of the

warehouse and was constructed of two thicknesses of heavy timbers.

On the last-mentioned date a fire occurred, which burned defendant's said dock and warehouse and a large part of the contents thereof, and left upon said premises a great quantity of burning débris, consisting of grain and mixed therewith timber, sticks, burlap, and other inflammable material.

The plaintiff, Northwest Door Company, brings this action, joining with it the other plaintiffs, insurance companies who claim to have paid certain losses incurred by reason of the fire, and who claim the right of subrogation as to such payments. Other insurance companies, who are alleged to have paid like claims but who declined to join as plaintiffs, were made defendants along with the Lewis Investment Company.

The complaint charges the Lewis Investment Company with negligence in the following particulars:

"First. That in March 1914, a fire had destroyed the dock and its contents situated upon the dock property of said defendant lying to the north of and separated from the planing-mill property of plaintiff, Northwest Door Company, by the Albina Ferry slip, which is about sixty feet in width, and that the said defendant, on or about the 12th day of May, 1914, in order to consume and destroy débris and waste upon said dock premises remaining after said fire, carelessly and negligently lighted and kindled a number of fires in and upon its, dock property with the charred and scorched timbers, merchandise and other inflammable matter thereon, and in the scorched and charred wheat remaining thereon.

"Second. That said defendant carelessly and negligently kept said fires burning up to and including June 3, 1914, and to the time of the fire that it 'is alleged destroyed the property of the plaintiff, Northwest Door Company, and negligently and carelessly replenished and increased and augumented said fires

during all of said times, and particularly on said third day of June, 1914.

"Third. That said defendant, in total disregard of plaintiff's rights and the danger to the property of plaintiff, Northwest Door Company, carelessly and negligently, during the times it is alleged said fires were burning, and particularly on the 3d day of June, 1914, refused to take any steps to guard and control said fires, and failed and neglected to guard the same, or any of them, or to take any precaution to prevent the same from spreading to or communicating with property in the vicinity, or to or with the adjacent mill or property of the plaintiff, Northwest Door Company, and carelessly and negligently failed to keep men on said premises to prevent the escape and spread of said fires to surrounding property, and to the mill and property of the plaintiff, Northwest Door Company.

"Fourth. That said defendant negligently and carelessly caused and permitted said fires to spread and communicate to the timbers of and to burn in the bulkhead located at the south end of defendant's said dock property.

"Fifth. That on the third day of June, 1914, while said fires were burning in said débris and in said bulkhead, and while a strong wind was blowing from the northwest, the said defendant carelessly and negligently failed to extinguish said fires, and negligently and carelessly kept the same burning, and negligently and carelessly failed to prevent the communication and spread thereof to the said planing-mill property of the plaintiff, Northwest Door Company.

"Sixth. That the said defendant, by its agents, servants, and employees, lighted and kindled said fires upon the —— day of May, 1914, and replenished the same and kept the same burning up until the destruction of the planing-mill property of plaintiff, Northwest Door Company, upon June 3, 1914, without first, or at all, having obtained a written permit so to do, signed by the Chief Engineer of the Fire Department of the City of Portland, Oregon, in violation of Ordinance No. 24014 of the said City of Portland,

regulating the lighting of fires in the open air of said city."

Plaintiffs further alleged in their complaint that by reason of the said defendant's alleged aforesaid carelessness and negligence, and by reason of the alleged violation by it of the above-mentioned ordinance of the City of Portland, Oregon, large quantities of sparks, burning cinders and live coals were blown and cast and scattered by the winds from said fires on the premises of the defendant, to and upon the mill building and property of the Northwest Door Company, and upon the shed or waiting-room adjacent to said plaintiff's said mill located upon the Albina Ferry Slip, and that thereupon said sparks, burning cinders and live coals kindled and lighted and set said shed and waiting-room and the mill and the property of the plaintiff on fire, and that the fire in said shed or waiting-room was communicated to the said mill and property of the plaintiff, Northwest Door Company, completely destroying the same and all of the property of the plaintiff described in and referred to in the amended complaint, to the damage of plaintiff, Northwest Door Company, and its real and personal property described in the amended complaint, in the full sum of $150,000.

The carelessness and negligence charged against the said defendant by plaintiffs, as well as the alleged violation of the city ordinance by said defendant, were denied by defendant Lewis Investment Company, in its answer.

The case was tried before a jury, which resulted in a verdict and judgment against defendant for seventy thousand ($70,000) dollars damages, from which judgment it appeals, assigning the following alleged errors:

First: That the court erred in rendering judgment in favor of plaintiff.

Second: That the court erred in instructing the jury as follows:

"It is alleged by plaintiffs that the plaintiff and defendant Insurance companies had, prior to the fire in question, issued their several policies of insurance to the plaintiff Northwest Door Company, and that after said fire the insurance companies respectively paid to plaintiff Northwest Door Company the full amount of insurance issued by them upon said property.

"I instruct you that where an Insurance Company pays a loss under a policy issued by it upon property damaged or destroyed by fire, where such fire occurs through the negligence of a third person, such Insurance Company becomes subrogated to the rights of the insured to the extent of the money paid by it under such policy, and in an action at law for the recovery of damages to such property from such third persons where the insurance does not equal the loss alleged to have been sustained, it is the duty of the Insurance Company and the owner to join as parties in such action. The defendant against whom such action is brought has no right to the benefits of the insurance and cannot rely either in whole or in part, on the defense that the owner of the property has been previously paid by the Insurance Company. Payment to the owner by an Insurance Company of the amount of his loss, in whole or in part, does not bar the right of action against one originally liable for the loss. In this case the defendant, Lewis Investment Company, has no concern with any contract that the plaintiff, Northwest Door Company, may have had with the Insurance companies, and said defendant's right or liabilities can neither be increased nor diminished by the fact that such contracts exist. Therefore, I instruct you that in determining the damages, if you reach that stage of the case, you should proceed as though the Insurance Companies, plaintiff and defendant, were not parties to the cause, and as though the

92 Or.—13

action was prosecuted by the plaintiff, Northwest Door Company, alone against the defendant, Lewis Investment Company, alone, and if you should award damages it will be your duty to find generally for the plaintiffs, as their several interests are regarded as a single claim. Of course you understand while that is true, the Insurance companies are parties plaintiff and defendant just the same."

Third: That the court erred in refusing defendant's request for the following instruction:

"I instruct you that so far as the Insurance companies plaintiffs are concerned in this case, that there is no right shown for the said Insurance companies to recover for any negligence on the part of the Lewis Investment Company allowing said Insurance Companies to recover, and therefore I instruct you that you are not to find a verdict in favor of the said Insurance companies plaintiff, or any of them jointly or severally as against the Lewis Investment Company."

Fourth: That the court erred in instructing the jury as follows:

"If you find from a preponderance of the evidence that the Lewis Investment Company kindled and lighted fires on its said dock premises for the purpose of burning débris and waste, as alleged in plaintiffs' amended complaint, without first having obtained a written permit so to do signed by the Chief Engineer of the Fire Department of the City of Portland, as required by the ordinance of said city, and that sparks, burning cinders or coals were carried by the wind from said fire or fires, to the property of the Northwest Door Company, thereby igniting and setting the same on fire, and you further find that the kindling and lighting of said fires was the approximate cause of the communication of said sparks, burning cinders or coals to said planing-mill property, and the destruction thereof by fire, you should find for plaintiffs.

"In this connection, I instruct you that where an act is done in violation of a city ordinance,

which act is the proximate cause of injury to the property of another, the owner of that property is not required to prove that such act was negligently done, but the law regards such act as negligence in itself.

"If you find that the violation of the ordinance did not cause the fire in this case, then it could have nothing to do with the matter, and should not be considered by you.

"In other words, if the fire would have taken place anyhow, whether there was a written permit or not, it wouldn't make any difference whether they had the permit or not."

Fifth: That the court erred in failing to give the following instruction requested by defendant:

"I instruct you that there is no evidence in this case showing a violation of any ordinance which was the proximate cause, or had anything to do with the setting of the fire at the plant of the Northwest Door Company, and therefore instruct you to disregard any evidence as to the violation of the ordinance."

Sixth: The court erred in giving the following instruction:

"In this connection I instruct you that where an act is done in violation of a city ordinance, which act is the proximate cause of injury to the property of another, the owner of that property is not required to prove that such act was negligently done, but the law regards such act as negligence in itself."

Seventh: That the court erred in admitting in evidence Ordinance 24,014 of the City of Portland, Oregon, which reads as follows:

"Section 1. It shall be unlawful for any person to light or kindle a bonfire or any fire for the purpose of consuming waste material in the open air, within the limits of the City of Portland, regardless of whether the same be lighted on a public street or other public ground, or on private property, without first having obtained a written permit so to do, signed by the Chief

Engineer of the Fire Department, who shall in all cases; when requested so to do, grant permits therefor, excepting when in his judgment, the kindling of such fires would endanger the safety of life or property.

"Section 2. Any person violating any of the provisions of this ordinance shall, upon conviction thereof in the Municipal Court, be punished by a fine not exceeding five hundred ($500) Dollars, or by imprisonment in the City Jail for not more than ninety (90) days, or by both such fine and imprisonment."

7½. The court erred in refusing to give the following instruction requested by defendants:

"Negligence may be defined as the failure to do that which a reasonably prudent person, guided by those considerations which ordinarily regulate the conduct of human affairs, would have done under the circumstances, or the doing of something which, under the circumstances, a reasonably prudent person would not have done."

Eighth: The court erred in giving the following instruction:

"Negligence is the counter term of diligence. It is the want of that reasonable care which would be exercised by a person of ordinary prudence under the existing circumstances, having in mind the probable danger of injury.

"This is the standard by which you are to determine in this case whether there was any negligence upon the part of the Lewis Investment Company. You will observe that this description of negligence, which I have given you, does not call for the highest degree of care, nor yet is it satisfied with a low degree of care. The law has taken as its standard the man of ordinary prudence and when the law undertakes through the tribunal which is called upon to determine the fact whether one has been negligent or not, the question is: was the conduct of the one charged the reasonable conduct of a person of ordinary prudence, under the

existing circumstances, having in view the probable danger of injury."

Ninth: The court erred in giving the following instruction:

"I instruct you that in the event you find for the plaintiffs it will be your duty to award plaintiffs such sum not exceeding One Hundred Fifty Thousand Dollars as you may find the plaintiff, Northwest Door Company, damaged by reason of said fire by the destruction of its two story frame building and additions, including trams, platforms, wharfs, log slides, piling, capping and bulkheads; and also fixed and movable machinery, parts, attachments and connections, settings and foundations of same, including shafting, gearing, pulleys, bearings, belting, planers, engines, pumps, piping, tools, millwright works, saws, conveyers, rollers, skids, cranes, chains, cars, wagons, tracks, wheelbarrows, jacks, electric light and power system, blow-pipe system, fire protection system, tools, implements, supplies and apparatus and patterns contained in and about said above described mill building and additions thereto; also planing mill stock manufactured and unmanufactured, and in process of manufacture, and lumber and material for manufacturing the same, and office furniture, equipment, fixtures, supplies, books, records and papers."

Tenth: That the court erred in refusing to give the following instruction:

"I instruct you in this case that it is necessary for the plaintiffs before they can recover, to prove three things: First, that the fire occurred; second, that the fire in the door factory was caused by the fire from the ruins of the Lewis Investment Company or the Columbia Dock; and third, that the Lewis Investment Company, or its workmen, were guilty of negligence at the time, causing the fire to be communicated from the Columbia Dock to the door factory. It is not sufficient for the plaintiffs to prove one or two of these elements, but all three of the elements must be proved to your satisfaction by a preponderance of the evi-

dence, and if the plaintiffs fail to prove by a preponderance of the evidence all three of these items, then I instruct you that the plaintiffs cannot recover.''

Eleventh: That the court erred in admitting photographs offered by plaintiff, Northwest Door Company.

Twelfth: That the court erred in admitting the testimony of Clara B. Thomas as an expert witness on values.

Thirteenth: That the court erred in admitting the testimony of L. A. Lewis, showing the estimated cost of removing débris from Columbia Dock.

Fourteenth: That the court erred in admitting testimony of C. W. Robison, in relation to finding fire in the bulkhead on the south side of Columbia Dock two days subsequent to the fire.

Fifteenth: That the court erred in failing to give the following instruction requested by defendants:

''I instruct you that where a fire is in progress upon a person's premises, which fire, however, was not started by the person owning the premises, the measure of duty on the person owning the premises is to use only ordinary care and diligence to prevent that fire from spreading to other premises.''

Sixteenth: That the court erred in failing to give the following instruction requested by defendants:

''Therefore, in this case, if you should find that 'the fire on the premises of the Lewis Investment Company was not started by the Lewis Investment Company, or its agents, but from some other source, and you should further believe that the said defendants did use ordinary care and diligence, then the defendants in this case would not be liable.''    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Wilbur, Spencer & Beckett* and *Messrs. Teal, Minor & Winfree,* with oral arguments by *Mr. Ralph R. Wilbur* and *Mr. Joseph N. Teal.*

For respondents there was a brief over the names of *Messrs. Sheppard & Brook, Messrs. Veazie, McCourt & Veazie,* and *Messrs. Goodfellow, Eells, Moore & Orrick,* with oral arguments by *Mr. Chester A. Sheppard* and *Mr. John McCourt.*

McBRIDE, C. J.—The testimony in this case covers more than one thousand pages and is conflicting in many particulars and a general review of it is impracticable. It is sufficient to say generally that there was sufficient testimony to justify the jury in finding that the destruction of plaintiff's mill was caused by the negligence of the defendant, Lewis Investment Company, in lighting and maintaining its fires upon the Columbia Dock property, even though this court, sitting as triers of the fact, might arrive at a different conclusion. Our task is to ascertain and determine from the record whether the trial was so conducted and the jury so instructed that no error to the prejudice of the substantial rights of the defendant may have influenced the verdict arrived at.

We will consider the alleged errors in the order in which they are assigned in the abstract, and as shown in the foregoing statement.

1. The first assignment is merely formal and need not be discussed.

2–4. As to the second assignment, we are of the opinion that the instruction correctly states the law: *Fireman's Ins. Co.* v. *Oregon R. R. Co.,* 45 Or. 53 (76 Pac. 1075, 2 Ann. Cas. 360, 67 L. R. A. 161, and cases there cited).

5. It is further contended that there is no legal evidence that the insurance companies paid any losses on account of the fire, and that plaintiffs have, therefore, failed to establish their right to subrogation. It is

true the testimony in this regard was oral and informal, but it was received without objection and was sufficient to take the matter to the jury. Samuel Connell, president of the Northwest Door Company, testified in substance, that he had examined the complaint and knew the list of companies therein specified; that the Northwest Door Company had insurance with all those companies, and that the losses were paid, as set forth in the complaint. In the absence of any objection, this epitomized the whole subject and was probably quite as enlightening to the jury as the presence of the policies, proofs of loss and receipts for payment thereof, would have been. There was no necessity for any formal assignments of *pro rata* proportions of the losses paid to the companies paying them. As shown by *Fireman's Ins. Co.* v. *Oregon R. R. Co.,* 45 Or. 53 (76 Pac. 1075, 2 Ann. Cas. 360, 67 L. R. A. 161), the right of an insurance company to subrogation follows as a matter of law from its payment of the loss. For the reasons above stated the request embraced in assignment IV was properly refused.

6, 7. Assignments V and VI relate to the instruction of the court, relating to the effect of the violation of the city ordinance, prohibiting the lighting or kindling of fires within the city limits without a permit from the chief engineer of the fire department. It is conceded the defendant had no such permit. It applied for a permit, which the chief engineer declined to grant but referred defendant to the mayor, who gave it some sort of verbal permission to burn the débris on the remains of Columbia Dock, but this permission was, legally, as ineffective as though it had been granted by the pastor of one of the city churches. It stands, therefore, practically admitted that any fire kindled or lighted by defendant, in the process of removing

the débris from its dock, was maintained in violation of the ordinance.

This being true and assuming that there was evidence to go to the jury, tending to show that the burning of plaintiff's mill was the result of fire communicated from the bonfires so unlawfully built and maintained, the question as to whether the building of such bonfires constituted negligence *per se* or were merely evidence of negligence becomes very important.

The decisions in this state are not harmonious. In *Beck* v. *Vancouver R. R. Co.,* 25 Or. 32 (34 Pac. 753), such violation was held to be only evidence of negligence. In *Kunz* v. *Oregon R. & N. Co.,* 51 Or. 191 (93 Pac. 141, 94 Pac. 504), Justice MOORE, without directly passing upon the question, intimates that such a violation is only evidence of negligence. In *Peterson* v. *Standard Oil Co.,* 55 Or. 511 (106 Pac. 337, Ann. Cas. 1912A, 625), the writer of the opinion suggested that such violation was evidence of negligence and not negligence *per se,* and attempted to distinguish between city ordinances and state statutes in that regard. The direct question was not involved in that case, which was brought under a state statute and only arose incidentally. The same doctrine was announced in *Palmer* v. *Portland, Ry. L. & P. Co.,* 56 Or. 262 (108 Pac. 211), and in *Stewart* v. *Portland Ry. L. & P. Co.,* 58 Or. 377 (114 Pac. 936), several of these being written by the author of this opinion, and representing then and now his personal view upon a question upon which the courts are at variance.

In *Morgan* v. *Bross,* 64 Or. 63 (129 Pac. 118), the question came up again, and in an opinion by the late Justice MOORE the doctrine announced in *Beck* v. *Vancouver R. R. Co.,* 25 Or. 32 (34 Pac. 753), and the cases

following that case, was overruled and the doctrine announced that, violation of an ordinance for the protection of the public, constituted negligence *per se*. This case was the subject of much discussion and some difference of opinion here, but it represented the deliberate judgment of a majority of the court, and must be taken as a final interpretation of the law in this jurisdiction. The same rule was adopted in *Rudolph* v. *Portland Ry. L. & P. Co.*, 72 Or. 560 (144 Pac. 93).

It being now the settled law in this state that violation of ordinances, of the character of the one under discussion, constitutes negligence *per se,* it now remains to apply the rule to the circumstances of this case.

It is fundamental that a person committing an unlawful act, which is the proximate cause of injury to another, will be compelled to respond in damages for such injury. The building of bonfires upon defendant's property was an unlawful act. It was not unlawful to fail or neglect to secure a permit, because so long as no fire was kindled the having or not having a permit was of no consequence. The unlawful act consisted in kindling a fire without the permit. The object of the ordinance was to prevent the building of bonfires in those cases or at those seasons or in those localities when, in the experienced judgment of the chief engineer of the fire department, such fires might result disastrously.

Whether with good or bad intent the fact remains that defendant, in the light of plaintiffs' evidence and in the judgment of the jury, unlawfully kindled a fire which burned plaintiff's property. Assuming, as we must after verdict, that the fires maintained by defendant produced the injury, we have this syllogism. The defendant unlawfully kindled a fire; it destroyed plain-

tiff's property; therefore, defendant must respond in damages. It is idle to speculate upon what would have happened if defendant had secured a permit. If defendant had acquiesced in what was practically a refusal by the chief engineer to issue the permit, and taken some other method of disposing of the waste and débris, which encumbered its property, then (assuming the verdict of the jury to be correct) no fire would have happened. The proximate cause of the injury in this case was the unlawful building of a fire so near the property of plaintiff that the fire got out of bounds and destroyed plaintiff's property.

The case of *Burbank* v. *Bethel Steam Mill Co.*, 75 Me. 373 (46 Am. Rep. 400), cited by counsel, is easily distinguished from the present. In that case the statute made the erection of a steam engine in any municipality a nuisance unless a license was obtained. The defendant erected such an engine and it was claimed the sparks therefrom set fire to and burned defendant's mill, and that the fire from the burning mill was communicated to plaintiff's house and destroyed it. In that case the thing prohibited was not the direct cause of the injury. The erection of the engine in itself did not destroy the plaintiff's property, but the use made of it after it had been unlawfully built was the injury complained of.

The distinction made by the court seems subtle and very technical and is not borne out by the cases cited in support of it. The court seems to have assumed that a license must necessarily have issued in case it had been applied for; in fact, the provision of the statute seems more designed to provide for inspection and inquiry into the method of its erection and the safeguards against public danger and convenience, than for any other purpose. Thus the statute provided for

a public notice of the hearing of the application and an investigation as to the height of chimneys, flues, size of boiler and furnace, and means of protection against fire and explosion: Me. Rev. Stats., p. 214, § 13 et seq.

This statute did not make the erection of such an engine a criminal offense, but provided that the authorities might cause it to be abated as a nuisance. The case seems to be an unique one and, in the writer's opinion, is not sustained by the better authorities, while some of the authorities cited in the opinion certainly lay down a different doctrine from that therein expressed.

It will be noticed the Maine case was not an action based upon violation of a municipal ordinance, but upon a violation of a state statute and, therefore, if authority in any way in this case it would be upon the proposition that when violation of a state statute is the proximate cause of any injury, such violation is not negligence *per se* but only evidence of negligence, a doctrine repudiated in *Peterson* v. *Standard Oil Co.,* 55 Or. 611 (106 Pac. 337, Ann. Cas. 1912A, 625), and by the great weight of authority in this country. The Maine case does not attempt to differentiate between the effect of state statutes and municipal ordinances in the respects mentioned, and Maine may be classed among the few states holding that the injurious violation of a state statute is only *prima facie* evidence of negligence.

Error is predicated upon the failure of the court to give the instruction set forth in assignment VII½, but this request is practically included in the instruction set forth in assignment VIII.

8. Assignment VIII challenges the correctness of the instruction therein set forth, by reason of the words "having in view the probable danger of injury," hav-

ing been added at the end of each paragraph. It is earnestly argued that the words quoted constituted judicial intimation to the jury that there were dangers connected with the methods used by the defendant in clearing away the débris from its dock and was, therefore, likely to have had a prejudicial effect against defendants. We think the assumption far-fetched. The proposition was stated generally and without reference to any fact in the particular case, and merely amounted to saying that one using fire, a known dangerous element, should consider the probable consequences of such use and the known dangers that result from the element getting beyond control, and use ordinary care to prevent such consequences. The phrase objected to is a mere variation of the language used in *Kendrick* v. *Towle*, 60 Mich. 363 (27 N. W. 567, 1 Am. St. Rep. 526), wherein the trial court defined negligence as follows:

"Negligence consists in the failure to use that degree of care which the law requires for the protection of interests *likely to be injuriously affected* by the want of it."

Concerning which definition the court observes:

"This definition was given by one of the ablest elementary law-writers of modern times, and has received the approval of this court: *Flint & P. M. Ry. Co.* v. *Stark*, 38 Mich. 717; *Brown* v. *Congress & B. St. Ry. Co.*, 49 Mich. 153 (13 N. W. 494), and we see no good reason for withdrawing that approval."

In *Martin et al.*, v. *Texas & Pac. Ry. Co.*, 87 Tex. 117 (26 S. W. 1052), the court approved the following instruction:

"By ordinary and proper care and diligence, is meant such care and diligence as a person of ordinary prudence and caution would commonly exercise under the circumstances, and the degree of care and diligence

required in each case is *proportionate to the amount of danger probably consequent* to a failure to exercise care and diligence.''

In the case at bar, while we would not commend the phrase criticised as the best possible language that could have been used, we are satisfied that it never could have been taken by the jury as an expression of opinion as to the merits of any phase of the controversy, and it is sustained by good authority. Taking the charge upon this subject as a whole, it was entirely fair to the defendant.

9. Assignment IX predicates error upon the court enumerating certain items of damages, concerning which it is claimed that no testimony was given. It is apparent that the court in its charge read from the complaint the list of items of property, which it was claimed were destroyed by fire, and then instructed the jury that if it found for the plaintiff it should allow such sum as it should find the plaintiff was damaged by their destruction. In this enumeration there are some items of apparently minor importance, concerning which no testimony was given at the trial.

Defendant's counsel enumerates trains, log slides, bulkheads, gearing, conyerers, rollers, skids, cranes, chains, wheelbarrows and jacks, as the items concerning which no testimony was given, but as to several of these the objection amounts to a mere verbal distinction, the articles being called by one name in the complaint and by another, or other designations, in the testimony. But it is beyond question that there was no evidence showing the existence of any log slides or bulkheads in connection with the plant, and there may be one or two other small items in the same condition, although after a second reading of the testimony the writer is unable to recall any others.

But we do not think the exception was sufficient to save the point urged. The objection should have distinctly pointed out to the court the items concerning which no testimony had been offered so they could have been eliminated. In matters concerning the admission of evidence the law has certain general formulae, such as "irrelevant," "incompetent," or "immaterial," which are frequently but not always held to sufficiently state an objection, but this rule cannot well be applied to an exception to an instruction. An exception to an instruction should, in fairness to the court, be sufficiently definite to enable the judge to check up on the evidence and eliminate an objection of the character here made, by withdrawing from the consideration of the jury the item, concerning which no testimony was offered. To hold otherwise would make the right of objection on this ground a mere trap to ensnare the court into technical error.

This case furnishes an example. The trial was begun on May 15th, and concluded on June 6th, nearly three weeks later, the sessions being practically daily, except holidays. Over a hundred witnesses were examined. The items enumerated in the complaint were very numerous and perhaps amounting to fifty or more. To expect the court to preside at the trial, hear and rule upon an objection every ten minutes, consider arguments of counsel upon the law, prepare his charge to the jury, and still carry in his memory a tally of the items upon which testimony was offered, and be able to recall those concerning which no testimony was given, would be to require more than any judge on earth is capable of.

Under such circumstances, counsel have two remedies; one is to point out to the court those items of plaintiff's claim, concerning which no testimony has

been offered, and ask that they be withdrawn from the consideration of the jury, or, they may object to the instruction, pointing out such items specifically so the court may correct his instructions to conform to the testimony.

The rule, relating to an instruction of the character here complained of, is analogous to that announced in *Murray* v. *Murray*, 6 Or. 17; *Langford* v. *Jones*, 18 Or. 307 (22 Pac. 1064); *Nickum* v. *Gaston*, 24 Or. 380 (33 Pac. 671, 35 Pac. 31), in which it is held that where a general exception is taken to a series of propositions, it is insufficient if one of them is good. In those cases, as in this, the underlying principle is, that the judge is entitled to know specifically what the party is objecting to, with a view to enabling him to correct the mistake, if one exists.

10. Assignment X relates to the failure of the court to give the requested instruction set forth therein. This request was substantially covered in the general instruction given, and there was no injury to defendant by the refusal of the court to give it in the exact language desired by defendants.

11. Assignment XI relates to the admission of certain photographs taken two days after the fire had occurred. There was evidence tending to show that conditions on the premises photographed, were substantially the same as on the day of the fire, and there was no error committed in admitting the photographs.

12. Assignment XII predicates error in the admission of the testimony of Clara C. Thomas, as to values of the machinery destroyed in the fire, it being claimed she disclosed no qualifications to testify as an expert on values. This witness testified as to her qualifications as follows:

"Q. Where do you live Miss Thomas?

"A. Portland.

"Q. What is your occupation?

"A. I am with the American Wood Working Machinery Co.

"Q. How long have you been working for them?

"A. About six years.

"Q. What are your duties there?

"A. I do clerical work, stenographic work, and assistant to the manager.

"Q. Does your duties there bring you in contact with the prevailing prices of woodworking machinery?

"A. It does.

"Q. Was that true in 1914?

"A. Yes.

"Q. At that time were you acquainted with the price of various woodworking machinery?

"A. Yes, in the planing-mill and factory line.

"Q. Do you handle new machinery and second-hand machinery?

"A. Yes; we deal principally in new machinery, but we have some second-hand machines.

"Q. Where does that company sell its machines, in what states?

"A. We sell in practically every state in the Union, and foreign countries also."

Upon cross-examination, Miss Thomas gave the following testimony:

"Q. Your work there is entirely office work, is it not?

"A. Yes, and whatever selling comes into the office, I am more or less interested in. I have sold single machines, and also sold whole planing-mill outfits.

"Q. You are a stenographer in the office?

"A. Yes, and assistant to the manager.

"Q. You have charge of the stenographic work?

"A. Yes, I have charge of the office.

"Q. You do the bookkeeping?

"A. We have no books at all.

92 Or.—14

"Q. You have never been in the machinery or mill line yourself, in a practical capacity?

"A. No, sir."

13. The determination of the qualifications of a witness to testify as an expert, is within the sound discretion of the trial court, and will not be disturbed on appeal unless there is no evidence to sustain the decision: *Rugenstein* v. *Ottenheimer,* 70 Or. 600 (140 Pac. 747). We are of the opinion the preliminary testimony of the witness tended to show that she had some, in fact, considerable knowledge of the market prices of machinery, and under the holdings in this state this renders her testimony on that subject competent: *Willis* v. *Horticultural Fire Relief,* 77 Or. 621 (152 Pac. 259).

14. Assignment XIII relates to the admission of the testimony of L. A. Lewis. Paragraph IX of plaintiffs' complaint, charged the defendant, Lewis Investment Company, with having kindled and maintained fires for the purpose of removing and consuming the débris upon Columbia Dock, which allegation was denied in the answer. The issue thus made was broad enough, as will be seen by the pleadings, to require some proof that the defendant participated in removing the débris, especially as it appeared from the testimony that the defendant's dock was occupied by other parties at the time it was burned. The fact that defendant had made a claim against the insurance companies for the estimated cost of the removal of the débris, indicated an intention on its part to take charge of its removal. The testimony was not strong and somewhat remote but it was not inadmissible. The fact that it was used in argument for a purpose for which it was not admitted, did not destroy its rele-

vancy, and no exception seems to have been taken to the course of counsel for plaintiff in so misusing it.

15. For the reasons stated in respect to the admission of the photographs, we hold that the testimony of C. W. Robison, constituting assignment XIV, was properly admitted.

16. We think assignments XV and XVI sufficiently covered by the general charge.

In general instruction VI, negligence is defined as the want of that reasonable care which would be exercised by a person of ordinary prudence under the existing circumstances, having in mind the probable danger of injury. Instruction VII, heretofore quoted, elaborates this definition to the extent of making plain what constitutes ordinary care. Instruction XI places the burden of proof upon the plaintiff to establish negligence.

Then follows instruction XII which, in our opinion, fully and fairly covers all matters embraced in assignments XV and XVI, and which is as follows:

"I instruct you that after one discovers fire on his premises (not set by himself) he is bound to exercise ordinary care and diligence to prevent it from spreading so as to endanger his neighbor's property. He is bound to put forth such reasonable effort to prevent the fire injuring his neighbor's property as a man of ordinary prudence, who was actuated by a proper regard for his neighbor's rights and safety, would in like circumstances put forth; and I instruct you that if you find from a preponderance of the evidence that at and prior to the time of the fire, which the plaintiffs allege destroyed the planing-mill property of plaintiff, Northwest Door Company, a fire or fires were smoldering or burning upon or in defendant, Lewis Investment Company's property, and that said defendant knew, or should have known, that said fires were so smoldering or burning upon its property, and that said defendant

carelessly and negligently failed to extinguish the same, or carelessly and negligently failed to guard or control the said fire or fires, or carelessly and negligently failed to take reasonable precautions to prevent the escape and spread of said fire or fires to the mill and property of plaintiff Northwest Door Company, and you find that by reason of such carelessness and negligence in any of the respects mentioned in this instruction, the planing-mill property of plaintiff Northwest Door Company was set on fire and destroyed by fire communicated thereto from sparks, burning cinders, or live coals blown, cast or scattered by the winds from said fires smoldering or burning on said defendant's said premises to and upon said planing-mill property, your verdict should be for plaintiffs."

This instruction stated the law fully and plainly and, taken in connection with the other instructions referred to, was sufficient.

17. It is claimed in the brief, though not assigned as error in the abstract, that the court erred in giving the following instruction:

"If you find from a preponderance of the evidence that the Lewis Investment Company kindled and lighted fires on its said dock premises, for the purpose of burning débris and waste, as alleged in plaintiff's amended complaint, without first having obtained a written permit so to do, signed by the Chief Engineer of the Fire Department of the City of Portland, as required by the ordinance of said city, and that sparks, burning cinders or coals were carried by the wind from said fire or fires to the property of the Northwest Door Company, thereby igniting and setting the same on fire, and you further find that the kindling and lighting of said fires was the approximate cause of the communication of said sparks, burning cinders or coals to said planing-mill property, and the destruction thereof by fire, you should find for plaintiffs."

The alleged error here is the use of the words "approximate cause" instead of "proximate cause."

This was probably an inadvertence of the court or the stenographer, and while there is a technical distinction between the two words, it is wholly improbable that the misuse of the word "approximate" misled the jury or had any effect upon the verdict. In view of subsequent instructions, we think this mere verbal error is cured in any event.

In general instruction XVIII the court used the following language, certain phrases of which we italicise:

"The *proximate cause* is an important matter in cases of this kind. The *proximate cause* is the principal cause, it is the main cause, the cause without which the accident would not have happened; in other words, without which the fire would not have happened. Ask yourselves what caused this fire? What was the main cause? What was the principal cause of this fire? That is, the *proximate cause.*"

And in the succeeding instruction the court said:

"I have used the expression *'proximate cause'* and by proximate cause is meant that, which in natural and continuous sequences produces the event without which the injury would not have happened. Does the evidence in this case satisfy you that the negligence, if there was negligence upon the part of the Lewis Investment Company, was the *proximate cause* of the burning of the Northwest Door Company plant? That is to say, was it that which produced the event, and without which this factory would not have been burned? And if you find that the negligence of the defendant company was not the *proximate cause* of the burning of the Northwest Door Company factory, then and in that event your verdict should be for the defendant."

In view of the whole charge, we do not think the inadvertent use of the word "approximate" constitutes reversible error.

It may not be inappropriate here to correct a printer's blunder in regard to the same word. In

*Peterson* v. *Standard Oil Co.*, 55 Or. 511, at page 522 (106 Pac. 337), the type makes the writer of that opinion and of this use the term "approximate cause." An inspection of the original opinion on file here shows that he in fact wrote "proximate cause." The opinion is correctly printed in the Pacific Reporter.

Upon the whole, we are satisfied that the case was fairly tried in the court below, and while, as usual, in these long drawn out cases some merely technical mistakes and oversights may have occurred, there were none which affected the final result, or which constitute reversible error. The briefs of respective counsel might well serve as models of arrangement and have greatly facilitated the labors of the court in its investigations.

The judgment is affirmed.          AFFIRMED.

BENSON, BURNETT and HARRIS, JJ., concur.