Argued December 16, 1909, decided January 18.    Rehearing denied February 15, 1910.

## PETERSON *v.* STANDARD OIL CO.

[106 Pac. 337.]

EXPLOSIVES—DANGEROUS CHARACTER—PLEADING—JUDICIAL NOTICE.

1. A complaint, alleging that F., a merchant, ordered of defendant a certain kind of kerosene that would stand an open-fire test of 120 degrees; that defendant negligently delivered to him, in a tank marked as containing the article ordered, a distillate that would only stand a test of 88 degrees; that F., relying on his contract and the label, sold some of it to plaintiff's intestate, as the article ordered; that she, while trying to kindle a fire with it, without negligence, was killed by an explosion which resulted; and that, had it been as represented, no explosion would have resulted—is sufficient, at least as against a general demurrer, without any allegation of the dangerous character of such distillate; the court taking judicial notice of its dangerous character, which is generally known, and a quality of a substance that is taken judicial notice of being in effect pleaded when the substance is mentioned.

EXPLOSIVES—SALES—NEGLIGENCE—VIOLATION OF STATUTES.

2. A violation of Laws 1903, p. 103, § 2, requiring the names and grades of distillates to be marked on the receptacles in which they are sold, and making it a misdemeanor not to do so, is negligence *per se.*

EXPLOSIVES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

3. The use of kerosene for the purpose of kindling fires is not in itself contributory negligence.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—PRESUMPTION.

4. In the absence of evidence, the presumption is that one used ordinary precautions for her safety, and was not guilty of contributory negligence.

APPEAL AND ERROR—REVIEW—DISCRETION OF LOWER COURT—EVIDENCE OF EXPERIMENTS.

5. To allow a witness, in an action for explosion in kindling a fire with a distillate, sold as a high-test kerosene, to testify to certain experiments made by her to determine whether kerosene would evaporate, and to exhibit to the jury the utensils used by her in making such experiments, the admission or rejection of which class of testimony is largely in the discretion of the trial court, cannot be said to be an abuse of such discretion.

From Multnomah: EARL C. BRONAUGH, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is an action brought by Ernest Peterson, as administrator of the estate of Victoria Beatrice Peterson, deceased, against the defendant company. The complaint, so far as material to the matters at issue, alleges the following facts:

"That one Fox, of Troutdale, County of Multnomah, State of Oregon, now is, and at all times hereinafter mentioned was, conducting a general merchandise business in the town, county, and State aforesaid, and that prior to the 19th day of March, 1906, the said Fox ordered from the defendant corporation herein, for the purpose of retailing the same to his customers, a large quantity of kerosene or coal oil that would stand an open-fire test of 120 degrees Fahrenheit. That, in pretended compliance with the said order, the defendant corporation herein did, acting through its officers and agents, carelessly and negligently deliver to the said Fox, in lieu of kerosene or coal oil that would stand an open-fire test of 120 degrees Fahrenheit without burning, a distillate, inferior oil, or liquid that would not stand an open-fire test of more than 88 degrees Fahrenheit without burning, and that said distillate, oil, or liquid so delivered by the defendant corporation herein, acting through its officers and agents as hereinbefore set forth, to said Fox, was carelessly and negligently delivered in a tank or drum labeled with the words, "Water White oil," and also

labeled to the effect that same would not burn under 120 degrees Fahrenheit open-fire test. That on or about the 19th day of March, 1906, and at the time of the occurrences hereinbefore and hereinafter mentioned, plaintiff's intestate was employed as a domestic of one Mary Rowley, in the town of Troutdale, Multnomah County, Oregon. That said Fox, relying upon the contract made with the defendant corporation herein, and the label upon the tank or drum in which said distillate, oil, or liquid was delivered to him by the defendant corporation herein, and said Fox believing the same to be kerosene or coal oil that would not burn under 120 degrees Fahrenheit open-fire test, and not knowing otherwise, did sell to Mary Rowley, of Troutdale, Oregon, and deliver to plaintiff's intestate for said Mary Rowley, a small quantity of said distillate, oil, or liquid as hereinbefore described for coal oil or kerosene that would stand an open-fire test of 120 degrees Fahrenheit without burning. That on the date last mentioned plaintiff's intestate did, for the purpose of starting a fire, place some kindling wood in a stove in which there was absolutely no fire, and did pour thereon a small quantity of said distillate, oil, or liquid, delivered to her by Fox, and purchased by the said Mary Rowley, from the said Fox, and by the said Fox from the said Standard Oil Company, as aforesaid. That plaintiff's intestate, in so doing, used due care and caution, and, not knowing otherwise, believed said distillate, oil, or liquid to be coal oil or kerosene that would stand an open-fire test of 120 degrees Fahrenheit without burning, and that plaintiff's intestate then with due care and caution placed the can containing the balance of said distillate, oil, or liquid delivered to her by Fox, about 2½ feet from the stove and kindling upon which she had poured a small quantity thereof, as hereinbefore stated. That immediately thereafter plaintiff's intestate with due care and caution applied a lighted match to the kindling, so placed as aforesaid, upon which she had previously poured said distillate, oil, or liquid as just hereinbefore stated, and that immediately upon applying the said lighted match there was an explosion, wherein and whereby plaintiff's intestate was severely burned, bruised, and maimed, and died from the effects thereof on the 19th day of March, 1906. That plaintiff's intestate used said distillate, oil, or liquid with due care and cau-

Sig. 17

tion and without carelessness or negligence on her part, and that, had same stood an open-fire test of 120 degrees Fahrenheit without burning, there would have been no ill result or explosion as just hereinbefore set forth. That said distillate, oil, or liquid, when used by plaintiff's intestate as just hereinbefore set forth, was in exactly the same condition as when delivered to the said Fox by the defendant corporation herein, acting through its officers and agents as hereinbefore set forth."

Defendant answered, denying all that part of the complaint above quoted, except that it admitted the death of plaintiff's intestate and the fact that Fox was conducting a general merchandise store at Troutdale. There was a further and separate defense of contributory negligence, which is as follows:

"That one Fox, of Troutdale, County of Multnomah, State of Oregon, on or about March 19, 1906, was, ever since has been, and for many years prior thereto had been, conducting a general merchandise business in the town of Troutdale aforesaid, and had been from time to time during all said period buying from defendant and directing to be shipped to him from Portland, Oregon, to Troutdale, Oregon, various quantities of kerosene or coal oil that would stand an open-fire test of 120 degrees Fahrenheit and various other kinds and qualities of the products of petroleum, among others, No. 1 Engine Distillate. That on or about January 26, 1906, the said Fox ordered of and from the defendant a quantity of kerosene or coal oil that would stand an open-fire test of 120 degrees Fahrenheit and a certain quantity of No. 1 Engine Distillate, and that thereupon and pursuant to said order the defendant shipped to the said Fox both kinds of said oil as aforesaid, properly tagged and marked in separate drums furnished by said Fox, and thereupon and thereafter, and on or about said date, the said Fox received said shipments of said coal oil and distillate as aforesaid for the purpose of sale to his customers.

"That at the time and place when and where plaintiff's intestate received the injuries resulting in her death, she carelessly, negligently, and recklessly, and for the purpose of starting a fire, poured thereon a quantity of oil sold by said Fox to said Mary Rowley and delivered by

him to said plaintiff's intestate, the particular kind of which said oil is to the defendant unknown; and thereupon said plaintiff's intestate, while said oil was so poured upon said wood and put to a use by plaintiff's intestate for which neither of said kinds of oil was intended or manufactured, applied a lighted match to said oil so placed as aforesaid, and thereby recklessly, negligently, and carelessly caused the same to ignite while she was then and there in the possession and control of said oil can from which she was pouring said oil, by reason whereof the said plaintiff's intestate received and suffered the injuries resulting in her death. That said injuries so resulting in her death were wholly caused and occasioned by her own want of care and negligence as aforesaid, and without the fault or negligence of this defendant or any of its servants or agents."

The reply admits all of paragraph 1, of the separate answer, to and including the words "Engine Distillate," but denies the remainder of the paragraph. It denies all of paragraph 2, except that it admits that plaintiff's intestate, for the purpose of starting a fire, poured on wood a quantity of oil, sold by Fox to Mary Rowley and delivered by him to plaintiff's intestate, and, after so doing, applied a lighted match to said oil, thereby causing it to ignite and to explode, and that by reason of such explosion she received and suffered injuries resulting in her death.

The plaintiff had judgment for $2,500, and defendant appeals. Other facts necessary to a decision appear in the opinion.                                    AFFIRMED.

For appellant there was a brief over the names of *Mr. Rufus A. Leiter, Mr. William D. Fenton,* and *Mr. Benjamin C. Dey,* with an oral argument by *Mr. Leiter.*

For respondent there was a brief and an oral argument by *Mr. Otto J. Kraemer.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The first error assigned is the overruling of defendant's general demurrer to the complaint. While the

complaint is somewhat meager in details, we are of the opinion that it states a cause of action. It charges, in effect, that the merchant Fox ordered certain barrels of Water White kerosene that would stand an open-fire test of 120 degrees Fahrenheit, and that defendant negligently and carelessly delivered to him distillate that would only stand a test of 88 degrees Fahrenheit, such distillate being carelessly and negligently delivered to Fox in a drum labeled "Water White oil" and also labeled to the effect that the same would not burn under 120 degrees Fahrenheit, open-fire test; and relying upon his contract and the label placed by defendant upon the drum, and believing it to be as represented, said merchant, Fox, sold a small quantity of it to Mrs. Rowley for coal oil and delivered it as such to plaintiff's intestate, who was Mrs. Rowley's domestic, and that plaintiff's intestate, while trying to kindle a fire with said substance, without any carelessness on her part, was killed by the explosion that resulted; that, if the substance had been as represented, no explosion would have resulted. This sufficiently alleges, we think, that the direct and proximate cause of the injury was the negligence of defendant. In other words, defendant sold a substance to Fox which would explode at a comparatively low temperature negligently representing it to be a substance that would explode or take fire only at a high temperature, and Fox innocently delivered it to deceased, who, had she received and used what she thought she was receiving and what Fox thought she was receiving, would not have been injured by such use. While it, perhaps, is customary to allege the dangerous nature of such substances, we do not think the lack of such allegation will be fatal on general demurrer.

The use of these distillates has become so general that we think the courts will take notice of their dangerous qualities, especially where the consequences of their use

are shown by the complaint to have been accompanied
by deadly results.  Thus, when gun-powder or dynamite
are mentioned, no statement in explanation of their dan-
gerous character is necessary, because they are so uni-
versally known, that to name them, is at once a sugges-
tion of their dangerous qualities.  Courts take judicial
knowledge of what is generally known and of facts that
have such general notoriety that any one may be fairly
presumed to know them.  The class of facts of which
judicial notice is taken is concisely stated in *Town of
North Hempstead* v. *Gregory,* 53 App. Div. 350 (65
N. Y. Supp. 867), from which we quote:

"In resolving such questions, the judges have recog-
nized that the criterion is the maxim, 'What is known
need not be proved;' and, beginning with Starkie, who,
as Thayer notes, first took special notice of the subject,
the text-writers, such as Phillips, Greenleaf, Stephen,
Rice, and Burr-Jones, are in accord.  Thus, Swayne, J.,
in *Brown* v. *Piper,* 91 U. S. 37, (23 L. Ed. 200), says:
'Facts of universal notoriety need not be proved.'  Com-
stock, J., in *Wynehamer* v. *People,* 13 N. Y. 378, says:
'We must be allowed to know what is known by all per-
sons of common intelligence.'  Daniels, J., in speaking
of the Pulteney title, in *People* v. *Snyder,* 41 N. Y. 397,
says: 'Its early history is a matter of general notoriety
and interest throughout the State, and, in fact, of the
United States, and for that reason should be judicially
noticed.'  Allen J., in *Howard* v. *Moot,* 64 N. Y. 263, says:
'Courts will take judicial notice of whatever ought to be
generally known within the limits of their jurisdiction
and that notice should be taken of the present Indian
occupancy of the State, as it is a matter of notoriety.'
Folger, J., in *Wood* v. *Insurance Co.,* 46 N. Y. 421, says:
'The matters of which judicial notice may be taken are
those which must have happened according to the con-
stant and invariable course of nature, or are of such
general and public notoriety that every one may fairly
be presumed to be acquainted with them.'  The expres-
sion of Brown, J., in *Hunter* v. *Railroad Co.,* 116 N. Y.
615, 621 (23 N. E. 10: 6 L. R. A. 246), is that notice
may be taken of facts which are generally known.  And,

as the common knowledge of man ranges far and wide, so the doctrine embraces matters so curiously diverse as, *e. g.*, the rising of the sun, the status of the Isle of Cuba, the late Civil War, the contents of the Bible, the character of a camp meeting, the height of the human frame, the fable of 'the frozen snake,' the characteristics and construction of the ice cream freezer, the general use of the diamond stack or the straight stack spark arrester, the habits of those who shave, in fine, 'all things, both great and small.' "

2. So courts take judicial knowledge of the intoxicating qualities of whisky, gin, and alcohol, and this court has held, in the case of *State* v. *Carmody,* 50 Or. 1 (91 Pac. 446, 1081: 12 L. R. A. [N. S.] 828) that it would take judicial knowledge of the fact that beer is intoxicating and it stands to reason that whatever quality in a substance is taken judicial knowledge of is, in effect, pleaded when the substance itself is mentioned, at least that such method of allegation, even if meager and defective, will be sufficient on general demurrer. In addition to this, the failure to properly mark tanks or other receptacles containing kerosene or distillates is made a misdemeanor by our statutes. (Laws 1903, p. 103.) Section 2 of the act of 1903 is as follows:

"Benzole, benzene, gasoline, naphtha, and distillates, must be sold under their true names and grades, respectively, and such names and grades must be impressed or otherwise plainly marked, upon the barrel, can, or vessel in which the same is sold, offered, or exposed for sale, respectively, or upon a label conspicuously and securely fastened thereto; and every barrel, can, or vessel of kerosene or coal oil that is offered or exposed for sale, shall be in like manner plainly marked or labeled with the word kerosene or coal oil, and with the degree, Fahrenheit, of fire test below which the same will not burn. Any person, firm or corporation violating any of the provisions of this section shall be fined the sum of not less than one hundred dollars ($100) nor more than five hundred ($500), or be imprisoned in the county jail not exceeding six months."

The complaint in this case alleges facts that constitute a violation of this statute, and we think that such violation constitutes negligence *per se.* Thompson, Negligence, Volume 1, §§ 10, 11; *Brower* v. *Locke,* 31 Ind. App. 353 (67 N. E. 1015) ; *Diamond Block Coal Co.* v. *Cuthbertson* (Ind. App.) (67 N. E. 558) ; *Osborne* v. *McMasters,* 40 Minn. 103 (41 N. W. 543 : 12 Am. St. Rep. 698) ; *Tobey* v. *Burlington C. R. & N. Ry. Co.,* 94 Iowa 256 (62 N. W. 761 : 33 L. R. A. 496) ; *Seimers* v. *Eisen,* 54 Cal. 418. Authorities to the same effect might be multiplied indefinitely, but the foregoing seem to be sufficient.

In Thompson, Negligence, Volume 1, Sections 10, 11, this language is used: "This seems to introduce in this place a consideration of the antithesis of the proposition contained in the preceding paragraph—the case where the legislature of the State, or the council of a municipal corporation, having in view the promotion of the safety of the public, or of individual members of the public, commands or forbids the doing of a particular act. Here the general conception of the courts, and the only one that is reconcilable with reason, is that the failure to do the act commanded, or the doing of the act prohibited, is negligence as mere matter of law, otherwise called negligence *per se;* and this, irrespective of all questions of the exercise of prudence, diligence, care, or skill; so that if it is the proximate cause of hurt or damage to another, and if that other is without contributory fault, the case is decided in his favor, and all that remains to be done is to assess his damages."

In *Osborne* v. *McMasters,* 40 Minn. 103 (41 N. W. 543 : 12 Am. St. Rep. 698), which was an action against a druggist for having sold poison without the label prescribed by statute, whereby plaintiff's intestate was killed, the court say:

"Negligence is the breach of legal duty. It is immaterial whether the duty is one imposed by the rule of the

common law requiring the exercise of ordinary care not to injure another, or is imposed by a statute designed for the protection of others. In either case the failure to perform the duty constitutes negligence, and renders the party liable for injuries resulting from it. The only difference is that in the one case the measure of legal duty is to be determined upon common-law principles, while in the other the statute fixes it, so that the violation of the statute constitutes conclusive evidence of negligence, or, in other words, negligence *per se.*"

In *Siemers* v. *Eisen,* 54 Cal. 418, the court, using substantially the language employed in *Jetter* v. *New York & Harlem R. R. Co.,* 2, Abb. Dec. (N. Y.) 464, say:

"It is an axiomatic truth that every person while violating an express statute is a wrongdoer, and, as such is *ex necessitate* negligent in the eye of the law, and every innocent party whose person is injured by the act which constitutes the violation of the statute is entitled to a civil remedy for such injury, notwithstanding any redress the public may also have."

We are not prepared to say, and express no opinion, as to whether in all cases the violation of a mere city ordinance is negligence *per se.* In such cases a different question presents itself, namely, whether, under the powers granted in a particular charter to prevent and regulate certain kinds of business, the city ordinance will have the effect to give a person injured a remedy which is not given by a general statute upon the same subject. In such cases, there is respectable authority for holding that a violation of such ordinances is not negligence *per se,* but mere evidence of negligence. Since a right of action in civil cases arises either from the common law or from statutes, it may well be doubted whether such cause can arise solely from the violation of a by-law of a municipal corporation.

It must be confessed, however, that many courts, and perhaps the majority, draw no distinction between State laws and city ordinances; but it seems to have been the

opinion of this court, in an early case, that a violation of such ordinance does not constitute negligence *per se,* but is only evidence from which negligence may be inferred. *Beck* v. *Vancouver Railway Co.,* 25 Or. 40 (34 Pac. 755). In this case the court say:

"To say that the mere fact of the violation of the ordinance is conclusive evidence of negligence, or is negligence *per se,* without regard to the conduct of the plaintiff or of the duty imposed upon him under the circumstances, would be to relieve him of the consequences of his acts when they contribute to the injury, and would result in an unjust liability upon the defendant."

In the case last cited, which does not seem to have been very thoroughly presented, the court seems to assume that the ordinance was an ordinary by-law prohibiting excessive speed of trains and providing a penalty for its violation; but an examination of the brief of respondent indicates that it was an ordinance granting the defendant company its right of way over the street, and specifying the speed at which it should run its care thereon. No penalty by way of fine is shown, and the ordinance seems to have been merely a contract between the city and the railway company. It stands to reason that, under such circumstances, no breach of such contract could give a right of action to a third party, and the case might well have gone off on that ground, and this, perhaps may have been in the judicial mind when the opinion was written, though it seems to be placed upon the broad ground that violation of a city ordinance is merely evidence of negligence. Conceding, without deciding, that such has become the settled law in this State by reason of the decision just adverted to, we see no ground either in logic or morals for applying the same rule to a case involving the violation of a general statute of the State. It must be confessed, however, that a few states hold without qualification that a violation of a state law furnishes only evidence of negligence, or as the New York courts say,

"*prima facie* evidence of negligence." This is notably true of New York, Delaware, and Nebraska; but the courts so holding are a small minority, and, in the opinion of the writer, furnish no logical reason for such holding. Concerning decisions holding the latter doctrine, Mr. Thompson observes:

"It is to be regretted that two or three authoritative courts have fallen into the aberration of holding that the violation of a statute, or municipal ordinance, enacted for the public safety, does not establish negligence *per se,* but is merely what the books term, 'evidence of negligence'—that is to say, competent but not conclusive evidence, to be submitted to the jury on the question of negligence or no negligence. It seems to have escaped the attention of the judges who have laid down this rule that it has the effect of clothing common juries with the dispensing power—the power to set aside acts of the legislature—a power exercised by the early kings of England, though its exercise was odious to our ancestors, so much so that the exercise of it disappeared with the Tudors."

Whatever may be the rule where the measure of care is prescribed by the by-laws of a municipal corporation, logic and reason would seem to indicate that, where the laws of the State for the protection of the public have prescribed that certain precaution shall be observed in the labeling of kerosene and distillates, such requirements constitute a legislative declaration of the minimum of care necessary under the circumstances, and that a less degree is negligence as a matter of law, and that the pleading and proof necessary in case of injury arising under such circumstances need only to show the breach of the statutory requirement, the fact that such breach was the approximate cause of the injury, and the damages sustained thereby.

3. For the reasons already stated, we think that the evidence submitted was sufficient to allow the case to be submitted to the jury, as it tended to show that defend-

ant had shipped to the merchant Fox a tank of distillate marked "Water White oil," that Fox had innocently delivered it as such to deceased, who, in kindling a fire with it, was killed by its explosion. In the absence of proof of contributory negligence, this was sufficient. It is urged that there is evidence showing contributory negligence on the part of deceased. First, it is said that the substance contained in the can from which it was poured was used for a purpose for which kerosene was not manufactured or sold. There was little evidence beyond that introduced by plaintiff as to what purposes kerosene oil was commonly applied, but that testimony tended to show that it was frequently used for the purpose of kindling fires, and that, if carefully used, its employment for that purpose was not hazardous. The common knowledge of the community is that its primary use is for the purpose of illumination; that secondarily it is used in oil stoves for heating purposes. It is also used for the purpose of removing grease and oils from wood or iron, and for kindling fires, as well as for many other purposes. Its use for any of these purposes is not uncommon, and we think that the employment of it for the purpose of kindling fires is not in itself negligence.

4. In *Ellis* v. *Republic Oil Co.*, 133 Iowa 11 (110 N. W. 20), which was a case very similar to the one at bar, the court say:

"The use of kerosene in kindling fires is too common and too well known for us to say that a person using reasonable care may not employ that agency without being chargeable with negligence."

The evidence was not such as to establish contributory negligence in the manner in which the oil was used. Nobody saw the accident, nor was there any odor of oil upon the fragments of the clothing of deceased. The facts are just as consistent with the theory that deceased first poured the oil on the kindling wood and afterwards

attempted to light it, as they are with the supposition that she attempted to pour with one hand and at the same time applied a lighted match with the other. If anything, the first supposition is the more reasonable, as it would have been the natural, safe, and convenient method of doing the act, and, in the absence of evidence, the presumption will be that deceased observed the ordinary precautions for her own safety. *Ellis* v. *Republic Oil Co.,* 133 Iowa 11 (110 N. W. 20) ; *McBride* v. *N. P. R. R. Co.,* 19 Or. 64 (23 Pac. 814).

As to the alleged error in instruction No. 17, given by the court, no exception appears to have been saved on the trial, and counsel for defendant, during a colloquy with the court at the close of the trial, finally accepted it as correct.

5. We do not think the court erred in admitting the testimony of the witness, Victoria Hampton, as to certain experiments made by her to determine whether kerosene would evaporate, and to exhibit to the jury the utensils used by her in making such experiments. Such testimony, it is true, should be admitted with extreme caution; but its admission or rejection is largely within the discretion of the trial court, and we cannot say that there was an abuse of such discretion in this instance. *Leonard* v. *S. P. R. R. Co.,* 21 Or. 555 (28 Pac. 887: 15 L. R. A. 221).

The judgment of the circuit court will be affirmed.

AFFIRMED.